## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| **TRUEMAIL TECHNOLOGIES, LLC,** | |
| Plaintiff, | Civil Action No. |
| v. | |
| **HUBSPOT, INC.** | Jury Trial Demanded |
| Defendant. | |

## COMPLAINT

Plaintiff TrueMail Technologies, LLC ("TrueMail"), by and through its attorneys, for its Complaint against Hubspot, Inc., (herein, "Defendant" and/or "Hubspot") hereby alleges as follows:

### I. NATURE OF THE ACTION

1. This is a patent infringement action to end Defendant's direct, joint, contributory and/or induced infringement of Plaintiff TrueMail's patented inventions, including but not limited to Defendant's unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of Plaintiff's inventions.

2. TrueMail holds all substantial rights and interest in and to United States Patent No. 9,363,084 (the "'084 patent"), issued on June 7, 2016, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Message." A true and correct copy is appended hereto as **Attachment A**.

3. TrueMail holds all substantial rights and interest in and to United States Patent No. 7,380,126 (the "'126 patent"), issued on May 27, 2008, entitled "Methods and Apparatus for

Controlling the Transmission and Receipt of Email Messages." A true and correct copy is appended hereto as **Attachment B**.

4. TrueMail holds all substantial rights and interest in and to United States Patent No. 8,560,655 (the "'655 patent"), issued on October 15, 2013, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages." A true and correct copy is appended hereto as **Attachment C**. Together the '084, '126 and '655 patents are the "Asserted Patents".

5. Plaintiff TrueMail seeks to prevent Defendant from continuing infringement of Plaintiff's patent rights. Plaintiff TrueMail further seeks monetary damages and prejudgment interest for Defendant's past infringement of the Asserted Patents.

## II. THE PARTIES

6. Plaintiff TrueMail is a limited liability company organized and existing under the laws of the State of Texas, with its corporate office located at 903 E. 18th ST., Suite 222, Plano, TX 75074.

7. Upon information and belief, Defendant Hubspot, Inc. is a Delaware corporation with its principal place of business located at 25 First Street, 2nd Floor, Cambridge, MA 02141. Pursuant to the State of Delaware's Division of Corporations, Hubspot's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

## III. JURISDICTION AND VENUE

8. This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

9. This Court has personal jurisdiction over Defendant because it has committed acts giving rise to this action within Delaware and within this judicial district. The Court's exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the forum with respect to both general and specific jurisdiction. Upon information and belief, Defendant transacts substantial business in the State of Delaware and this Judicial District. Further, Defendant has committed acts of infringement in this District, by among other things, infringing, contributing to and/or inducing the infringement of TrueMail's Asserted Patents knowing that the directly infringing devices and services are used and/or sold in the State of Delaware and this Judicial District as well as providing service and support to Defendant's customers in this District.

10. Venue in the District of Delaware is proper pursuant to 28 U.S.C. § l400(b) as Defendant is a Delaware corporation.

## IV.   BACKGROUND

### TrueMail

11. James Logan "Logan" and Charlie Call "Call" are the named inventors of the '084 patent, the '126 patent, and the '655 patent.

12. Logan is a prolific inventor. Logan is listed as an inventor or co-inventor on no fewer than 32 United States patents. Call has worked as a patent attorney for over fifty years. As a patent attorney, Call has extensive experience with computers and computer-related patents. Call has drafted over 500 United States patents. Call is also listed as an inventor or co-inventor on no fewer than 12 United States patents.

**The Asserted Patents**

13. On May 31, 2002, United States Patent Application No. 10/160,708 (the "'708 application") was filed. The '708 application claimed, among other things, a method and apparatus for controlling the transmission and receipt of email messages.

14. Logan, and Call were listed as co-inventors of the '708 application.

15. On May 27, 2008, the PTO issued United States Patent No. 7,380,126, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages."

16. On May 23, 2008, Call filed United States Patent Application No. 12/154,491. (the "'491 application"). The '491 application was a division of the previously-filed '708 application. The '491 application claimed, among other inventions, a method and apparatus for controlling the transmission and receipt of email messages.

17. On October 15, 2013, the PTO issued United States Patent No. 8,560,655 entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages."

18. On October 14, 2013, Call filed United States Patent Application No. 14/053,551. (the "'551 application"). The '551 application was a division of the previously-filed '708 application, and the previously filed '491 application. The '551 application claimed, among other inventions, a method and apparatus for controlling the transmission and receipt of email messages.

19. On June 7, 2016, the PTO issued United States Patent No. 9,363,084 entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages."

20. The Asserted Patents share a common specification.

21. The '126 patent claims, among other inventions, a method for identifying unwanted email messages, by which the sender is assigned a unique, private, digital signature.

The sender, in turn, agrees to conform to a set of rules of conduct, and the recipients receive the email with a public digital signature, which allows them to verify the identity of the sender. This method allows for the monitoring of the number of substantially identical emails being sent to different recipients, and allows for distinguishing a given email message from unsolicited and unwanted email messages. *See* '126 patent, 7:6-48

22.  The '126 patent specification describes an email system in which a sender is limited in transmitting identical emails to a predetermined number of recipients over a specified period of time. The sender, who is identified by its unique digital signature, also manifests a promise to not solicit business or contain unsolicited advertising. The unique digital signature provides a method to distinguish unsolicited email messages from ones in which the sender has promised that the recipient has made a prior request or granted permission to receive said email. This promise is legally binding and traceable to the sender by its unique digital signature. *See* '126 patent, 7:6-67 & 8:11-64.

23.  The '655 patent claims, among other inventions, a method for identifying unwanted email messages, by which the sender is assigned a unique, private, digital signature. The sender, in turn, agrees to conform to a set of rules of conduct, and the recipients receive the email with a public digital signature, which allows them to verify the identity of the sender. This method allows for the monitoring of the number of substantially identical emails being sent to different recipients, and allows for distinguishing a given email message from unsolicited and unwanted email messages. *See* '655 patent, 7:11-45.

24.  The '655 patent specification describes an email system in which a sender is limited in transmitting identical emails to a predetermined number of recipients over a specified period of time. The sender, who is identified by its unique digital signature, also manifests a

promise to not solicit business or contain unsolicited advertising. The sender also promises that no further email messages will be sent to the recipients upon receipt of a cancellation request by the recipients. The unique digital signature provides a method to distinguish unsolicited email messages from ones in which the sender has promised that the recipient has made a prior request or granted permission to receive said email. This promise is legally binding and traceable to the send by its unique digital signature. *See* '655 patent, 7:46-67 & 8:1-9:31.

25. The '084 patent claims, among other inventions, a method for identifying unwanted email messages, by which the sender is assigned a unique, private, digital signature. The sender, in turn, agrees to conform to a set of rules of conduct, and the recipients receive the email with a public digital signature, which allows them to verify the identity of the sender. This method allows for the monitoring of the number of substantially identical emails being sent to different recipients, and allows for distinguishing a given email message from unsolicited and unwanted email messages. *See* '084 patent, 7:17-8:9.

26. The '084 patent specification describes an email system in which a sender is limited in transmitting identical emails to a predetermined number of recipients over a specified period of time. The sender, who is identified by its unique digital signature, also manifests a promise to not solicit business or contain unsolicited advertising. The unique digital signature provides a method to distinguish unsolicited email messages from ones in which the sender has promised that the recipient has made a prior request or granted permission to receive said email. This promise is legally binding and traceable to the send by its unique digital signature. *See* '084 patent, 8:10-56.

27. TrueMail holds all substantial rights in and to the Asserted Patents, including all rights to recover for all past and future infringements thereof.

**Hubspot's Acts of Infringement**

28. Upon information and belief, Hubspot manufactures, provides, uses, sells, offers to sell, and/or distributes infringing systems and methods. Defendant's infringing systems include, but is not limited to its Hubspot digital marketing platform available on its website hubspot.com.

29. Defendant's products infringe the Asserted Patents at least by forming metadata containing a unique identification of the sender and manifesting a legally binding promise by the sender that the transmitted message conforms to rules of good conduct, encrypting the metadata and message in the form of a DKIM signature, describing the DKIM signature to validate the message and metadata, and presenting the validated message to a recipient. The sender agrees to comply with multiple rules of good conduct as set forth by Hubspot, and in turn Hubspot transmits the sender's emails, after assigning them a public digital signature, which is publicly stored as a DNS record.

30. TrueMail has been and will suffer damages as a result of Defendant's infringing acts unless and until enjoined.

**Direct and Joint Infringement**

31. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

32. Upon information and belief, Hubspot sells infringing products in this jurisdiction and elsewhere. Hubspot manufactures, uses, distributes, offers to sell, and/or sells products within the Hubspot digital marketing platform, including Hubspot Free, Starter, Basic, Professional, and Enterprise. Upon information and belief, Hubspot incorporates within Hubspot's digital marketing platform software and products that infringe the Asserted Patents.

Hubspot's manufacture, use, distribution, offer to sell, and/or sale of Hubspot's digital marketing platform in the State of Delaware within the judicial district, and elsewhere in the United States, without Plaintiff's authority, directly infringes the Asserted Patents.

33. Upon information and belief, Hubspot employees use Hubspot's products and/or systems in a manner that directly infringe the Asserted Patents.

34. Upon information and belief, Hubspot contracts with customers and/or end users and provides infringing software to them in this jurisdiction and elsewhere to create, make and provide infringing products. Upon information and belief, Hubspot enters into agreements with customers and/or end users and others concerning the operation, use and creation of infringing products within this jurisdiction and elsewhere. All elements of at least claims 1 through 13 of the '126 patent, claims 1 through 20 of the '655 patent, and claims 1 through 11 of the '084 patent are found on Hubspot's digital marketing platform. For example, Hubspot's digital marketing platform enables its customers to send emails to recipients after assigning a private digital signature to the sender, in the form of a DKIM signature. The sender agrees to comply with multiple rules of good conduct as set forth by Hubspot, and in turn Hubspot transmits the sender's emails, after assigning them a public digital signature, which is publicly stored as a DNS record. This allows the recipients to verify the identity of the senders. Hubspot's rules of conduct include sending only marketing emails to recipients who have granted permission, limiting the number of identical emails sent to differing recipients, and legally binding promises imposed upon the senders.

35. Upon information and belief, Hubspot provides a downloader that provides infringing software including updates to customers to result in infringement of the patents. Hubspot issues computerized instructions to direct or control users and infringing devices to

8

conduct acts of infringement. Through its software on Hubspot's servers and embedded on users' infringing devices, as well as its contractual relationships with users, Hubspot directs and controls infringing devices to perform acts of infringement.

36. To the extent that some elements of a claim are performed by a different party than Hubspot, Hubspot – through its software and infringing products – participates in the infringement (as described above and herein) and receives a benefit upon performance of the steps of the patented method. For example, Hubspot provides the software that establishes the manner and/or timing of the performance of the steps such as software that downloads other software, downloads a content file, establishes a communication link, or other actions that a user may request or result from user actions. Hubspot receives a benefit from such actions by the customer as it allows it to provide a product that would be desired or allows customers to purchase services and products from Hubspot. Hubspot's contracts with a user also create an agency relationship or governs infringing activity for purposes of joint infringement.

37. All of the above acts constitute acts of direct infringement.

**Induced and Contributory Infringement**

38. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

39. Upon information and belief, Hubspot has been and continues to indirectly infringe the Asserted Patents in the State of Delaware within this judicial district, and elsewhere in the United States, by, among other things, at least, without Plaintiff's authority, inducing and/or contributing to third parties, including without limitation customers, resellers and/or end users of Hubspot's digital marketing platform (and other software), infringement of the claims of Plaintiff's patents.

40. Upon information and belief, the acts described in paragraphs 40 to 45 concerning the manufacture, use, offer for sale, sale, operation, distribution, and/or installation of Hubspot's products and/or software and those described below also constitute acts of induced and contributory infringement. Customers and users use the infringing products and software to market, design, and control the transmission and receipt of email messages.

41. To the extent that some elements of a claim are performed by a different party than Hubspot, Hubspot, through its software and infringing products, participates in the infringement (as described herein) and receives a benefit upon performance of steps of a patented method. For example, Hubspot provides the software that establishes the manner and/or timing of the performance of the step that is requested by the plaintiff such as software that downloads other software, downloads a content file, establishes a communication link, and/or other actions that a user may request or result from user actions. Hubspot receives a benefit from such actions by the customer as it allows it to provide a product that would be desired or allows customers to purchase and services products from Hubspot.

42. Upon information and belief, Hubspot provides its customers and/or users of its products such as Hubspot Free, Starter, Basic, Professional, and Enterprise, encouragement and software to use, load and operate in an infringing manner or to create and use infringing products. Upon information and belief, Hubspot further induces its customers and/or users of Hubspot's digital marketing platform to use its products (and accompanying software) by providing subscriptions to Hubspot's digital marketing platform services. Further, Hubspot has actively induced infringement by its customers and/or users of Hubspot's products and software in this judicial district. Upon information and belief, Hubspot knowingly and specifically designed Hubspot's digital marketing platform in a manner that infringed the Asserted Patents. Hubspot also provides support services for the Accused System and Method, including providing instructions, guides, online materials, and technical support that cause its customers to infringe the patents. Hubspot's digital marketing platform has no substantial non-infringing use. Hubspot has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within the jurisdiction and elsewhere. Hubspot continues to provide instructions to load Hubspot's digital marketing platform (and other software) since having notice and actual knowledge of the Asserted Patents.

43. Upon information and belief, Hubspot has had knowledge of the Asserted Patents at least as of the service of this complaint. Notwithstanding, Hubspot continues to willfully and with specific intent infringe and cause others to infringe the Asserted Patents. Hubspot provides, makes, sells, and offers to sell Hubspot systems with the specific intent that its customers, third parties, and/or end users use the Hubspot systems in an infringing manner, and its customers, third parties, and/or end users do so. Upon information and belief, Hubspot provides and

instructs third parties to use the aforementioned product in the manner claimed in the Asserted Patents.

44. Upon information and belief, Hubspot's digital marketing platform has no substantial non-infringing uses and is especially made and/or adapted so as to infringe the Asserted Patents. Hubspot has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within this District and elsewhere. Hubspot continues to contribute to the infringement of third parties even after having notice and actual knowledge of the Asserted Patents as previously described.

45. Upon information and belief, customers and users of Hubspot's systems reside within this District and conduct acts of direct infringement within this District.

## COUNT ONE

### PATENT INFRINGEMENT—U.S. PATENT NO. 9,363,084

46. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

47. Defendant directly infringes the '084 patent by making, using, offering to sell, and selling products and software through Hubspot's digital marketing platform in violation of 35 U.S.C. § 271(a).

48. Defendant indirectly infringes the '084 patent by inducing or contributing to the infringement of the '084 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by its customers/consumers.

49. Defendant does not have a license or permission to use the claimed subject matter in the '084 patent.

50. As a direct and proximate result of Defendant's direct, induced, and/or contributory infringement of the '084 patent, TrueMail has been injured and has been caused significant financial damage.

51. Defendant's aforementioned acts have caused damage to TrueMail and will continue to do so unless and until enjoined.

52. TrueMail alleges upon information and belief that Defendant has, knowingly or with willful blindness, willfully infringed one or more claims of the '084 patent. Defendant had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by TrueMail. Defendant acted with knowledge of the Accused Patents and, despite its knowledge or despite that it should have known of an objectively high likelihood that its actions constituted infringement of TrueMail's valid patent rights, continues to infringe.

53. This objectively-defined risk was either known or so obvious that it should have been known to Defendant. TrueMail seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendant.

## COUNT TWO

### PATENT INFRINGEMENT—U.S. PATENT NO. 7,380,126

54. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

55. Defendant directly infringes the '126 patent by making, using, offering to sell, and selling products and software through Hubspot's digital marketing platform in violation of 35 U.S.C. § 271(a).

56. Defendant indirectly infringes the '126 patent by inducing or contributing to the infringement of the '126 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by its customers/consumers.

57. Defendant does not have a license or permission to use the claimed subject matter in the '126 patent.

58. As a direct and proximate result of Defendant's direct, induced, and/or contributory infringement of the '126 patent, TrueMail has been injured and has been caused significant financial damage.

59. Defendant's aforementioned acts have caused damage to TrueMail and will continue to do so unless and until enjoined.

60. TrueMail alleges upon information and belief that Defendant has, knowingly or with willful blindness, willfully infringed one or more claims of the '126 patent. Defendant had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by TrueMail. Defendant acted with knowledge of the Accused Patents and, despite its knowledge or despite that it should have known of an objectively high likelihood that its actions constituted infringement of TrueMail's valid patent rights, continues to infringe.

61. This objectively-defined risk was either known or so obvious that it should have been known to Defendant. TrueMail seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendant.

## COUNT THREE

### PATENT INFRINGEMENT—U.S. PATENT NO. 8,560,655

62. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein

63. Defendant directly infringes the '655 patent by making, using, offering to sell, and selling products and software through Hubspot's digital marketing platform in violation of 35 U.S.C. § 271(a).

64. Defendant indirectly infringes the '655 patent by inducing or contributing to the infringement of the '655 patent in violation of 35 U.S.C. § 271(b)-(c)&(f), including by its customers/consumers.

65. Defendant does not have a license or permission to use the claimed subject matter in the '655 patent.

66. As a direct and proximate result of Defendant's direct, induced, and/or contributory infringement of the '655 patent, TrueMail has been injured and has been caused significant financial damage.

67. Defendant's aforementioned acts have caused damage to TrueMail and will continue to do so unless and until enjoined.

68. TrueMail alleges upon information and belief that Defendant has, knowingly or with willful blindness, willfully infringed one or more claims of the '655 patent. Defendant had knowledge of the Accused Patents as alleged above, having been advised of the existence and substance of the Accused Patents by TrueMail. Defendant acted with knowledge of the Accused Patents and, despite its knowledge or despite that it should have known of an objectively high

likelihood that its actions constituted infringement of TrueMail's valid patent rights, continues to infringe.

69. This objectively-defined risk was either known or so obvious that it should have been known to Defendant. TrueMail seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendant.

## V. JURY DEMAND

70. Plaintiff hereby demands a jury on all issues so triable.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff TrueMail respectfully requests that the Court:

A. Enter judgment that Defendant directly, contributes to, or induces others to infringe one or more claims of the Accused Patents literally and/or under the doctrine of equivalents;

B. Permanently enjoin Defendant, their agents, servants, and employees, and all those in privity with Defendant or in active concert and participation with Defendant, from engaging in acts of infringement of the Accused Patents;

C. Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of the Accused Patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

D. Award Plaintiff its costs, disbursements, attorneys' fees;

E.  Award Plaintiff prejudgment and post-judgment interest to the maximum extent provided under the law; and

F.  Award Plaintiff such further and additional relief as is deemed appropriate by this Court.

Dated: October 18, 2017

Of Counsel:

William M. Parrish
Victor G. Hardy
HARDY PARRISH YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Rd. Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
Email:  bparrish@HPYlegal.com
Email:  vhardy@HPYlegal.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**ATTORNEYS FOR PLAINTIFF
TRUEMAIL TECHNOLOGIES, LLC**